Getty, J.
I respectfully dissent from the Majority’s conclusion that Howard Klein, M.D., the pediatrician expert witness offered by the Respondent, Michael Christian, offered a sufficient factual basis for his opinion that lead-based paint inside the property owned by Stewart Levitas, Petitioner, at 3605 Spaulding Avenue (“the Spaulding Property”), was a substantial factor cause of Mr. Christian’s harm from lead poisoning. See Majority Op. at 246-51, 164 A.3d at 236-39. Although I agree with the Majority that evidence in the record may have been sufficient for Dr. Klein to reasonably conclude that Mr. Christian “was exposed to lead-based paint at the [Spaulding Property],” Dr. Klein did not adequately explain the methodology by which he reached that conclusion. And, the record does not show that Dr. Klein had an adequate supply of data, or offered any methodology in support of his opinion that it was Mr. Christian’s exposure to lead-based paint at the Spaulding Property that was the substantial factor cause of his elevated blood lead levels and injuries from lead paint poisoning, as opposed to his period of residency at another property at which he resided as a child, 4946 Denmore Avenue (“the Denmore Property”), which Dr. Klein agreed also appeared to be a source of lead ingested by Mr. Christian.
Maryland courts have consistently held that an expert lacks an adequate factual basis for an opinion as to source causation in a lead paint case unless the expert can show an adequate supply of data and describe the methodology that enabled the *257 expert to rule out other reasonably probable sources of the plaintiffs lead exposure and elevated blood lead levels, and thereby show that it was the defendant’s property that was the substantial factor cause of the plaintiffs lead poisoning. As this Court held in its recent opinion in Roy v. Dackman, “it is not enough for an expert to conclude that a certain property is the source of the child’s exposure to lead when other probable sources have not been eliminated.” 445 Md. 23, 48, 124 A.3d 169 (2015). Indeed, we specifically held that expert opinion testimony as to source causation that does not exclude other probable sources is “ ‘as likely to confuse as to assist a jury.’ ” Id. (quoting Ross v. Hous. Auth. of Balt. City, 430 Md. 648, 664, 63 A.3d 1 (2013)).
As Dr. Klein failed to provide a factual basis adequate to exclude the Denmore Property as a probable source of Mr. Christian’s harm, as required by Roy, and did not describe the methodology he used to reach his opinions as to lead source causation, I would affirm the trial court’s grant of the motion to exclude his testimony regarding lead source causation. Therefore, I respectfully dissent.

A. Causation in Lead Paint Litigation

When a plaintiff raises a negligence claim alleging injury from the presence of lead-based paint in a property owned by a defendant, the plaintiff bears the burden of proof for all essential elements of that claim, including “that the defendant’s negligence was a proximate cause of the accident or injury.” Hamilton v. Kirson, 439 Md. 501, 526, 96 A.3d 714 (2014) (quoting Peterson v. Underwood, 258 Md. 9, 15, 264 A.2d 851 (1970)). One aspect of proximate cause is causation-in fact or, in other words, “whether [a] defendant’s conduct actually produced an injury.” Id. When there are two or more independent possible causes of an injury, courts apply the “substantial factor” test to determine whether a defendant’s conduct produced the injury.
This Court first applied the substantial factor test in a lead paint case in Ross v. Housing Authority of Baltimore City, *258 430 Md. 648, 63 A.3d 1 (2013). In Ross, we explained that substantial factor causation in a lead paint case “can be conceived as a series of links:”
(1) the link between the defendant’s property and the plaintiffs exposure to lead; (2) the link between specific exposure to lead and the elevated blood lead levels, and (3) the link between those blood lead levels and the injuries allegedly suffered by the plaintiff. To be a substantial factor in causing [a plaintiffs] alleged injuries, the [subject property] must have been a source of [the plaintiffs] exposure to lead, that exposure must have contributed to the elevated blood lead levels, and the associated increase in blood lead levels must have been substantial enough to contribute to her injuries.
Ross, 430 Md. at 668, 63 A.3d 1. The three links described in Ross can be labelled as “(1) source, (2) source causation, and (3) medical causation.” Rogers v. Home Equity USA, Inc., 453 Md. 251, 265, 160 A.3d 1207, 2017 WL 2334471 (2017). This Court later clarified that in order to establish the first “source” link in the chain, “the plaintiff must tender facts admissible in evidence that, if believed, establish two separate inferences: (1) that the property contained lead-based paint, and (2) that the lead-based paint at the subject property was a substantial contributor to the victim’s exposure to lead.” Kirson, 439 Md. at 529-30, 96 A.3d 714.
A plaintiff may establish the required causation links in a lead paint case through either direct or circumstantial evidence. Id. at 527, 96 A.3d 714. This Court has endorsed two separate theories whereby a plaintiff may rely on circumstantial evidence to establish the first two of the Ross links, “source” and “source causation.” Under a Dow theory, first articulated by the Court of Special Appeals in Dow v. L & R Properties, Inc., a plaintiff may establish that a property was the source of lead exposure, and that the exposure at that property caused elevated blood lead levels, if the plaintiff can “rule out” other reasonably probable sources of lead exposure, and thereby show that the subject property is the “only *259 possible” source of the plaintiffs lead exposure. 144 Md.App. 67, 75-76, 796 A.2d 139 (2002). See also Kirson, 439 Md. at 530-37, 96 A.3d 714 (discussing Dow and cases applying a Dow theory of causation). And, under a theory first articulated in a dicta hypothetical in Hamilton v. Kirson, 439 Md. at 537-38, 96 A.3d 714, and subsequently adopted in Rogers v. Home Equity USA, Inc., this Court has held that at the summary judgment stage of litigation, even without excluding other reasonable probable sources of lead, a plaintiff may “rule in” a defendant’s property as a source of lead exposure by showing a “reasonable probability” that the property contributed to the lead exposure, and that the exposure was a “reasonably probable source” of the plaintiffs elevated blood lead levels. 453 Md. at 248, 256, 160 A.3d 1207.
I dissented from this Court’s endorsement and application of a new theory of causation in Rogers. In part, that dissent was based on my view that, the proper standard of proof under which a plaintiffs case should be scrutinized at the summary judgment stage is whether the plaintiff has shown that it was “more probable than not” that a particular property was a substantial factor cause of his exposure to lead and elevated blood lead levels, as opposed to a “reasonable probability.” [1] Rogers, 453 Md. at 264-69, 160 A.3d at 1207. But, of greater significance to the motion to exclude at issue in this case, I also disagreed with the Rogers Majority’s narrow focus on evidence as to the subject property owned by the defendant, when other evidence in the record indicated that another property was an equally likely source of the plaintiffs harm. Id. at 268-72, 160 A.3d 1207. In my view, when there are multiple potential sources of a plaintiffs exposure to lead-based paint and elevated blood lead levels, each of which is *260 more than a mere possible source of the harm, and the plaintiff has claimed that only one of them was the source of his harm, the plaintiff must, at a minimum, show that the subject property was a more probable source of that exposure and elevated blood lead levels than the other potential source(s) in order to establish that the subject property was a substantial factor cause of his harm. Id. See also Peterson v. Underwood, 258 Md. 9, 17, 264 A.2d 851 (1970) (holding that “where plaintiff by his own evidence shows two or more equally likely causes of the injury, for only one of which defendant is responsible, plaintiff can not recover”).
The Majority in this case asserts that the standard which I described in my dissent in Rogers “stem[s] from a fundamental misunderstanding of the substantial factor test.” See Majority Op. at 250, 164 A.3d at 238. The Majority notes that the substantial factor test “applies when ‘two or more independent negligent acts bring about an injury.’ ” Id. (quoting Pittway Corp. v. Collins, 409 Md. 218, 244, 973 A.2d 771 (2009)). As “the substantial factor test, by its very definition, permits more than one cause of injury,” the Majority concludes that “[i]t would be illogical for us to require an expert to narrow the plaintiffs lead exposure down to a single source.” Id.
A plaintiff may certainly raise a claim under the substantial factor test that there was more than one cause of his harm. As I noted in a footnote in my Rogers dissent, in a lead paint negligence case a plaintiff may claim “that the defendant’s property is a contributing source of his harm from lead exposure, as part of a claim that multiple sources of lead exposure cumulatively proximately caused his harm.” Rogers, 453 Md. at 259 n.1, 160 A.3d 1207. (Emphasis in original). In such a scenario, I believe that the appropriate burden that the plaintiff would need to meet would be to show that the causes that he identified, considered as a whole, were a more probable than not source of his harm. But, firstly, the plaintiff must actually raise such a claim, and produce evidence in support of it as to the other alleged sources of lead exposure. And, secondly, as the Court of Special Appeals pointedly noted in Hamilton v. Dackman, such a claim would be a “hard case” to *261 establish, because “a plaintiff would need to produce probability-level evidence as to exposure at each property separately.” 213 Md.App. 589, 616, 75 A.3d 327 (2013).
In contrast, when a plaintiff only identifies a single property that he claims was the source of his exposure to lead and lead poisoning, but evidence before the trial court shows that there are other reasonably likely sources of that harm, the question before the trier of fact is not whether the defendant’s property was merely a contributor to some of his lead exposure along with the other cause(s) the plaintiff has identified. Rather, the issue becomes whether that property was, compared to the other reasonably likely causes, a substantial contributor to the plaintiffs lead exposure and consequent lead poisoning. In such a case, although the plaintiff does not need to show that a defendant’s property was the only contributing cause of his lead exposure and injury, he must show at least that the property was “an important or significant contributor to [his] injuries.” Rogers, 453 Md. at 261, 160 A.3d 1207 (quoting Black’s Law Dictionary (10th ed. 2014)). In my view, that requires the plaintiff to show that the defendant’s property was a more probable source of his exposure and elevated blood lead levels than the other property(s).

Expert Testimony and Causation

Under either a Dow or Kirson/Rogers theory of causation, a plaintiff can overcome summary judgment and place the issue of whether the defendant’s property caused the plaintiffs lead exposure and elevated blood lead levels before the trier of fact through a sufficient showing of direct or circumstantial evidence. Dow, 144 Md.App. at 75, 796 A.2d 139; Rogers, 453 Md. at 248, 160 A.3d 1207. The plaintiff is not required, as a matter of law, to have an expert opinion as to causation. See e.g., Ross, 430 Md. at 669, 63 A.3d 1 (holding that “the link between a defendant’s property and a plaintiffs childhood exposure to lead paint and dust may be established through circumstantial evidence, even if expert opinion testimony is not *262 available”). However, expert opinion may be necessary in some instances for a plaintiff to overcome summary judgment, depending on the nature and extent of the evidence. See e.g,, Rogers, 453 Md. at 276, 160 A,3d 1207 (overturning trial court’s grant of summary judgment based in part upon expert testimony as to the effect of continuing exposure to lead on the plaintiffs blood lead levels, from which “a jury could reasonably infer that if [defendant’s property] was not contributing source [of lead exposure,]” plaintiffs blood lead levels would have decreased while living at that property). And, of course, a plaintiff who overcomes summary judgment still bears the burden of proof as to the element of causation at trial, where expert opinion can play a critical role in persuading a jury.
The standard for admissibility of expert testimony as to source causation is thus a vital one in lead paint actions. The Majority holds today that an expert who gives an opinion that a defendant’s property caused a plaintiffs harm does not need to show or explain that other reasonably probable sources did not cause the plaintiffs harm. Majority Op. at 250-51, 164 A.3d at 238 (holding that it is “not the rule” that a source causation expert in a lead paint action “must exclude other properties before he can testify that the plaintiff was exposed to lead at the subject property”) The Majority’s removal of the requirement that a source causation expert must exclude other reasonably probable sources in order for his expert testimony to be admitted at trial, in combination with the Court’s earlier decision in Rogers, is likely to lead to the widespread adoption of the new Kirson/Rogers theory of causation in lead paint actions, and the abandonment of the Dow theory. When a plaintiff has resided at more than one property that may have contained lead paint, he is unlikely to go to the time and expense of gathering evidence or obtaining an expert opinion to exclude all the properties that did not cause his harm if, instead, he can simply focus in on a particular defendant’s property and show that it was a reasonably probable source of its harm. However, as I shall explain below, the Majority’s holding is not only likely to usher in a major change in the *263 conduct of lead paint negligence actions but, more importantly, is also inconsistent with the factual basis requirement in Maryland Rule 5-702 and Maryland precedent interpreting that requirement in lead paint actions.

B. Factual Basis Requirement for Expert Opinion Testimony in Lead Paint Litigation

Maryland Rule 5-702 states that “[e]xpert testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue.” A trial court “bases this determination on three factors,” one of which is “ ‘whether a sufficient factual basis exists to support the expert testimony.’ ” Id.
Maryland Rule 5-702’s requirement of an adequate factual basis is necessary to ensure that an expert’s testimony “constitutes more than mere speculation or conjecture.” Roy, 445 Md. at 42, 124 A.3d 169 (quoting Exxon Mobil Corp. v. Ford, 433 Md. 426, 478, 71 A.3d 105, as supplemented on denial of reconsideration, 433 Md. 493, 71 A.3d 144 (2013)). That factual basis “may arise from a number of sources, such as facts obtained from the expert’s first-hand knowledge, facts obtained from the testimony of others, and facts related to an expert through the use of hypothetical questions.” Id. at 43, 124 A.3d 169 (quoting Taylor v. Fishkind, 207 Md.App. 121, 143, 51 A.3d 743 (2012), cert. denied, 431 Md. 221, 64 A.3d 497 (2013)). In order to assess the adequacy of the factual basis, a trial court looks at two factors: first, that the expert “[has] available an adequate supply of data with which to work,” and second, that the expert “employ[s] a reliable methodology in analyzing that data.” Id. at 42-43, 124 A.3d 169 (quoting CSX Tramp., Inc. v. Miller, 159 Md.App. 123, 189, 858 A.2d 1025 (2004).
Maryland appellate courts have had several occasions in recent years to apply these principles in lead paint litigation to evaluate the adequacy of the factual basis supporting an expert opinion offered by a pediatrician as to source or source *264 causation—that a plaintiffs elevated blood lead levels and harm from lead poisoning were caused by exposure to lead while living at the subject property owned by the defendant.

Court of Special Appeals Cases

In Taylor v. Fishkind, the Court of Special Appeals considered whether a trial court had abused its discretion in granting summary judgment in favor of the defendant based upon a finding that the plaintiffs pediatrician expert witness, Dr. Henri Merrick, lacked an adequate factual basis as to his opinions regarding lead paint source and source causation. 207 Md.App. 121, 124, 51 A.3d 743 (2012), cert. denied, 431 Md. 221, 64 A.3d 497 (2013). Dr. Merrick’s report concluded that the plaintiff was exposed to lead-based paint at two separate properties, based on “the age of the dwellings, the described conditions of the first dwelling, the detection of lead in an exterior window apron of this first dwelling and [the plaintiffs] blood lead levels while living at each dwelling.” Id. at 130, 51 A.3d 743.
The Court of Special Appeals determined that Dr. Merrick’s opinion that the property contained lead-based paint was “only supported by the age of the house and the presence of lead on one component of the exterior of the house.” Id. at 142, 51 A.3d 743. The intermediate appellate court explained that he could not rely upon a presumption that the house contained lead paint simply “because it was built at a time when many houses contained lead-based paint.” Id. Moreover, the court discounted the exterior testing because the plaintiff had provided only “scant” circumstantial evidence that the interior of the property contained lead-based paint. Id. at 142, 51 A.3d 743. Likewise, the Court of Special Appeals concluded that the only evidence on which the expert relied to conclude that the plaintiff was exposed to lead at the defendant’s property was evidence that her blood lead levels were elevated while she resided there. Id. at 145, 51 A.3d 743. The Court of Special Appeals held that “more is required to support Dr. Merrick’s opinion that [the plaintiff] was exposed to lead-based paint at [the defendant’s property]” because she conceded that she *265 could not prove that elevated level was caused by the plaintiffs move to that property, as opposed to other properties where she had resided. Id. This Court subsequently denied the plaintiffs petition for a writ of certiorari. 431 Md. 221, 64 A.3d 497 (2013).
The Court of Special Appeals considered a factually similar case in City Homes, Inc. v. Hazelwood, in which the plaintiffs pediatrician expert, Dr, Eric Sundel, testified that the property owned by the defendant “was the source of the [plaintiffs] lead exposure” and “a substantial contributing factor to injuries [the plaintiff] sustained.” 210 Md.App. 615, 687, 63 A.3d 713, cert. denied, 432 Md. 468, 69 A.3d 476 (2013). The intermediate appellate court held that Dr. Sundel’s testimony lacked a sufficient factual basis, and the circuit court abused its discretion in permitting that testimony, because Dr. Sundel had “limited knowledge of [the plaintiffs] ... potential exposure to lead from other sources,” and had “failed to investigate other potential sources—ie., to determine whether lead had been found in other residences in which appellee had lived or visited—to gain insight into whether [the defendant’s property] was a source of [the plaintiffs] lead exposure.” Id. at 689, 63 A.3d 713. This Court declined to grant the plaintiffs petition for a writ of certiorari. 432 Md. 468, 69 A.3d 476 (2013).

Court of Appeals Cases

In Ross v. Housing Authority of Baltimore City, this Court first addressed whether a pediatrician’s proposed expert opinion testimony that a defendant’s building was the source of the plaintiffs exposure to lead and harm from lead poisoning was supported by an adequate factual basis. 430 Md. 648, 63 A.3d 1 (2013). In that case, the plaintiff had resided at several homes as a child, and had elevated blood lead levels while she was living at the property owned by the defendant and at another property. Id. at 651-54, 63 A.3d 1. Lead testing on the defendant’s property detected lead-based paint on the exterior and one interior surface. Id. at 654-55, 63 A.3d 1. The plaintiffs expert, Dr. Jacalyn Blackwell-White, had reviewed “vari *266 ous records concerning [the plaintiff] and her two residences,” and, based on that review, had “opined that Ms. Ross had been exposed to lead-based paint at both residences, that such exposure ‘resulted in sustained toxic blood levels’ during her early developmental years.” Id. at 656, 63 A.3d 1. However, Dr. Blackwell-White also gave an opinion that the defendant’s property was “the source” of the plaintiffs elevated blood lead levels for a two year period. Id. at 659, 63 A.3d 1. She explained that “[i]f there is lead-based paint inside a house, [she would] consider it to be a contributing cause to elevated lead levels,” and that “she would assume the home to be the most probable source of elevated blood lead levels ‘until proven otherwise,’ particularly if the house was built before 1970.” Id. at 660, 63 A.3d 1.
This Court affirmed the circuit court’s grant of a motion to exclude Dr. Blackwell-White’s testimony as lacking an adequate factual basis. Id. at 662-63, 63 A.3d 1. We concluded that “Dr. Blackwell-White did not explain adequately how she reached the conclusion that the [defendant’s] home was ‘the source’ of the lead exposure that resulted in [the plaintiffs] elevated blood lead levels.” Id. at 663, 63 A.3d 1. We emphasized that “[m]erely reciting certain information that she took into account and then stating the ultimate conclusion without explaining how and by what expert method that information was weighed did not provide a basis by which the trier of fact could evaluate that opinion.” Id.
Furthermore, we noted that because there was evidence in the record as to “various other sources of lead exposure in [the plaintiffs] environment,” there were multiple potential causes of the plaintiffs exposure and elevated blood lead levels, and thus “[t]he real question for the fact-finder is how much exposure to lead at the [defendant’s property] contributed to [the plaintiffs] [elevated] blood lead levels over the pertinent time period.” Id. at 664, 63 A.3d 1. As Dr. Blackwell-White did not offer any definitive opinion as to that question, we held that her “ultimate conclusion identifying the [defendant’s property] as ‘the source’ was as likely to confuse as to assist a jury.” Id. We concluded our analysis by cautioning *267 that permitting an expert to testify under such circumstances could improperly give the expert’s opinion “the imprimatur of court-endorsed expert status,” leading to a “risk that a jury would give the opinion undue weight because it was stated by a court-qualified expert.” Id.[2]
Prior to today’s opinion, this Court most recently addressed whether there was an adequate factual basis for a pediatrician expert’s opinion as to source and source causation in a lead paint case in Roy v. Dackman, 445 Md. 23, 124 A.3d 169 (2015). In Roy, the petitioner, through his mother, filed a suit against the respondent property owners, alleging that the owners’ property was “the only source of lead paint” which he had ingested as a child. Id. at 30, 124 A.3d 169. The petitioner had resided for the first eight months of his life at another property before moving to that owned by the respondents, where he then resided for a two year period. Id. at 31, 124 A.3d 169. During his period of residency at the respondents’ property, tests were performed that showed elevated blood lead levels. Id. at 32, 124 A.3d 169. The respondent’s property was built in 1920, and petitioner’s counsel had obtained testing of the exterior of the property positive for lead-based paint. Id. at 31-32, 124 A.3d 169. Petitioner’s mother also testified to the presence of flaking and chipping paint in both the interior *268 and exterior of the property. Id. Based on those facts, the petitioner’s expert pediatrician, Dr. Eric Sundel (also an expert in the Court of Special Appeals’ holding in Hazelwood, supra), indicated that he would give an opinion that lead-based paint at the property caused the petitioner’s injuries. Id. at 38, 124 A.3d 169. The respondents thereafter moved to exclude Dr. Sundel’s testimony, and the circuit court granted the motion. Id. at 36-37, 124 A.3d 169.
This Court held that the circuit court did not abuse its discretion in excluding Dr. Sundel’s testimony, concluding that there was not an adequate factual basis, and the “proposed opinion falls victim to the same problems as those discussed in Taylor and Ross.” Id. at 47, 124 A.3d 169. We determined that the proposed opinion “was based solely on scant circumstantial evidence, including the age of the home and exterior tests of the paint on the dwelling,” and “did not rule out other probable sources” of lead exposure. Id. at 47-48, 124 A.3d 169. Furthermore, we noted that there was “no discussion in the record of Dr. Sundel’s methods” that he used to reach his opinion. Id. at 48, 124 A.3d 169.
Notably in Roy, we referenced our opinion in Kirson, 439 Md. at 537-38, 96 A.3d 714, where we had indicated in dicta that a plaintiff may be able to show sufficient evidence to “rule in” a property as containing lead-based paint even without excluding all other possible sources.[3] Nevertheless, we held in Roy that, without excluding other potential sources of lead, there is not an adequate factual basis “for an expert to *269 conclude that a certain property is the source of [a] child’s exposure to lead when other probable sources have not been eliminated.” Roy, 445 Md. at 47, 124 A.3d 169. (Emphasis added). Roy thus expressly recognized a distinction in the law that, in my view, is critical to this appeal. On the one hand, a plaintiff may be able to make a sufficient evidentiary showing to “rule in” a subject property as a probable source of his lead poisoning without needing to put forth evidence to exclude other probable sources of the plaintiffs lead exposure. But, on the other hand, an expert opinion that identifies a particular property as the source of the plaintiffs lead poisoning requires an adequate factual basis that includes evidence sufficient for the expert to exclude other probable sources.
The Roy Court appeared to rest this distinction upon Rule 5-702’s statement that “[ejxpert testimony may be admitted ... if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue.” As the Court explained, when there are multiple reasonably probable sources of the plaintiffs lead exposure, an expert opinion that does not explain why it was the defendant’s property that was a substantial factor that caused the plaintiffs harm, as opposed to another property, is “as likely to confuse as to assist a jury.” Id. at 48, 124 A.3d 169 (quoting Ross, 430 Md. at 664, 63 A.3d 1).

Factual Basis Standard for Causation Expert Opinions Offered In a Lead Paint Negligence Action

I distill from reviewing the above-described cases[4] that an expert opinion in a lead paint ease as to source and source causation—that a plaintiffs elevated blood lead levels were caused by exposure to lead while living at the subject property *270 owned by the defendant—is supported by an adequate factual basis pursuant to Maryland Rule 5-702 only when three conditions are met. First, the data on which the expert relies to form his opinion must be more than “scant” circumstantial evidence. Roy, 445 Md. at 47, 124 A.3d 169; Taylor, 207 Md.App. at 142, 51 A.3d 743. See also Hamilton v. Dackman, 213 Md.App. at 608, 75 A.3d 327 (noting that “an expert cannot transform thin evidence or assumptions into viable causal connections simply by labeling them an expert opinion”). Second, when a plaintiff has resided in at least one property other than that owned by the defendant, which evidence shows was a reasonably likely source of lead-based paint, the expert must be provided with, and show to the trial court, data adequate for him to rule out the other property(s) as probable sources of the plaintiffs lead exposure and elevated blood lead levels. Roy, 445 Md. at 47, 124 A.3d 169; Ross, 430 Md. at 664, 63 A.3d 1; Hazelwood, 210 Md.App. at 689, 63 A.3d 713; Taylor, 207 Md.App. at 145, 51 A.3d 743. Third, the expert must explain the methodology he used to reach his conclusions regarding source and source causation so that the trier of fact can evaluate that methodology, as opposed to merely reciting the facts on which he relied and then state his ultimate conclusions. Roy, 445 Md. at 48, 124 A.3d 169; Ross, 430 Md. at 663, 63 A.3d 1.

C. Factual Basis in this Case

I agree with several portions of the Majority’s analysis with respect to the factual basis for Dr. Klein’s testimony as to source causation. Initially, I agree with the Majority that Dr. Klein did not lack an adequate factual basis for his opinion merely because he did not conduct an “independent investigation” or otherwise obtain first-hand knowledge of Mr. Christian or the properties at issue. It is true that Dr. Klein was not a treating physician, and that he had not seen or questioned Mr, Christian or his family members directly. He stated in his deposition testimony that all of his opinions in the report that he prepared for trial were based upon records that he had received from Mr. Christian’s counsel’s office. Additionally, *271 Dr. Klein offered opinions in response to several hypothetical questions during that deposition. However, as the Majority notes, “we have never held that an expert witness cannot rely on information obtained from other sources.” Majority Op. at 247 n.15, 164 A.3d at 236 n.15. Indeed, we have explicitly held that an expert’s factual basis “may arise from a number of sources,” including “facts obtained from the testimony of others, and facts related to an expert through the use of hypothetical questions.” Roy, 445 Md. at 43, 124 A.3d 169 (quoting Taylor v, Fishkind, 207 Md.App. 121, 143, 51 A.3d 743 (2012)).
Furthermore, I agree with the Majority that Dr. Klein had adequate data to support his expert opinion that, to reasonable degree of medical probability, Mr. Christian “was exposed to lead-based paint at the [Spaulding Property].” As the Majority notes, there was substantial circumstantial evidence on which Dr. Klein relied in formulating that opinion:
Dr. Klein concluded—with a reasonable degree of medical certainty—that Spaulding was a reasonably probable source of Christian’s lead exposure for several reasons:
• The 2012 Arc Report found that 31 interior locations and five exterior locations tested positive for lead;
• Lead paint was banned federally in 1978, and therefore it was unlikely that Spaulding had been painted with lead-based paint since Christian lived there in the 1990s;
• [Department of Housing and Community Development] records described the poor condition of the property;
• A[ ] [Maryland Department of the Environment] certification indicated that Spaulding was not lead free;
• Christian’s [free erythrocyte protoporphyrin (“FEP”)] and blood lead levels were first found to be elevated while he was living at Spaulding, when he had not yet lived anywhere else;
• Family members testified that Spaulding was in a deteriorated condition while Christian was living there and that Christian touched peeling paint at the property; and
*272 • Christian regularly stayed at Spaulding during the day while his mother was at work, both when he lived there and when he lived at Denmore.
Majority Op. at 248-50, 164 A.3d at 237-38.[5] (Emphasis in original, footnote omitted). The 2012 Arc Report that determined multiple interior locations of the Spaulding Property tested positive for lead was not direct evidence that lead-based paint was present during the period of time that Mr. Christian resided at that property. But, when combined with the fact that lead paint had been banned federally prior to Mr. Christian’s period of residency at the Spaulding Property, it was strong circumstantial evidence that lead paint was present on the property during the relevant time period. Moreover, the evidence of Mr. Christian’s elevated lead blood tests at the Spaulding Property, the Department of Housing and Community Development records describing the poor condition of the property, as well as interrogatory testimony of several of Mr. Christian’s relatives that described poor condition of the property while Mr. Christian lived there and that he regularly stayed in the home during the daytime, while circumstantial, was more than “scant” evidence that Mr. Christian was exposed to lead while living at that property. Dr. Klein thus had sufficient data from which he could conclude that defects in the Spaulding Property’s interior such as chipping and flaking paint exposed Mr. Christian to lead while residing at that property.
However, Dr. Klein did not explain the methodology he used to assess that data and reach his conclusion that Mr. Christian was exposed to lead at the Spaulding Property. Instead, in both his report and his deposition testimony, he merely cited the “information that [he] took into account and then stat[ed] *273 [his] ultímate conclusion without explaining how and by what expert method that information was weighed.” Ross, 430 Md. at 663, 63 A.3d 1. As this Court held in Ross, that kind of recitation by an expert of the information relied upon, without any explanation, “did not provide a basis by which the trier of fact could evaluate th[e] opinion.” Id. As Dr. Klein did not detail his methodology in support of his opinion that Mr. Christian was exposed to lead at the Spaulding Property, I cannot agree that he had a sufficient factual basis for that opinion.
Much more troubling, however, is that the Majority has overlooked the absence of any factual basis or methodology in support of Dr. Klein’s additional opinion that it was Mr. Christian’s exposure to lead-based paint at the Spaulding Property that was the substantial factor cause of his elevated blood lead levels and injuries from lead poisoning, as opposed to his period of residency at the Denmore Property, which Dr. Klein agreed was also a source of his exposure to lead. The Majority states that Dr. Klein did “not ignore[ ]” and “considered” information in the record as to the Denmore Property, referencing his report in which he stated that he considered “[property information for 3605 Spaulding Avenue [and] 4946 Denmore Avenue.” Majority Op. at 247-48 n.15, 250, 164 A.3d at 236-37 n.15, 238. However, it was not sufficient for Dr. Klein to have merely looked at or briefly “considered” information as to the Denmore Property. Rather, under this Court’s precedent in Ross and Roy, he needed to put forth an adequate supply of data to show that it was exposure to lead at the Spaulding Property, and not the Denmore Property, that was the probable substantial cause of his harm from lead poisoning. See Roy, 445 Md. at 47, 124 A.3d 169; Ross, 430 Md. at 663-64, 63 A.3d 1. And, he needed to explain what methodology he used to rule out the Denmore Property as a probable source of exposure. Id.
Based on the evidence in the record, Dr. Klein both failed to offer an adequate supply of data and failed to describe his methodology in support of his opinion that the Spaulding Property was the substantial factor cause of Mr. Christian’s elevated blood lead levels and harm from lead poisoning. Some *274 of the data on which Dr. Klein relied indicated a possibility that the Spaulding Property was a substantial factor cause of his elevated blood lead levels. Specifically, Mr. Christian had an elevated blood lead level of 9 [µ]g/dL on February 20,1992, when he was just over two years old, and, according to the testimony of his relatives, at that time, he had not “yet lived anywhere else.” See Majority Op. at 239, 249-50, 164 A.3d at 231-32, 237-38. However, there was also evidence that after Mr. Christian subsequently moved to reside at the Denmore Property in October 1992, his blood lead levels significantly increased while he resided at that property, first to 10 (µg/dL in February 18, 1993 and then to 17 [µg/dL on July 16, 1993. Id. at 239, 164 A.3d at 231. The record thus indicates that Mr. Christian’s blood lead levels rose both while he was residing at the Spaulding Property, and while he resided at the Denmore Property. But, Dr. Klein never identified the data on which he relied to conclude that it was the initial exposure at the Spaulding Property, and not what appears to be a subsequent exposure at the Denmore Property, that was the substantial cause of his harm from lead poisoning. Nor did he describe any methodology that he had used to reach that conclusion.
Relying on the Court’s suggestion in Kirson, 439 Md. at 537-38, 544, 96 A.3d 714, that a plaintiff may be able to show that a property was a source of lead exposure without excluding other reasonably probable sources of such exposure, the Majority holds that it “is not the rule” in Maryland that an expert as to source causation in a lead paint ease must “exclude other [reasonably probable] properties before he can testify that the plaintiff was exposed to lead at the subject property.” Majority Op. at 250, 164 A.3d at 238. The Majority is incorrect. As noted above, when this Court last considered expert testimony as to lead paint source causation in Roy, the Court recognized that Kirson had suggested “that a lead poisoning case may succeed grounded on suitable circumstantial evidence as to source,” without needing to exclude other properties. Roy, 445 Md. at 47, 124 A.3d 169. Nonetheless, the Court expressly held in Roy that expert testimony must be held to a higher standard, holding that “it is not enough for an *275 expert to conclude that a certain property is the source of [a] child’s exposure to lead when other probable sources have not been eliminated.” Id.
The Majority today is, therefore, overturning an express holding of this Court, less than two years from the date that holding was issued, in direct contravention of the principle of stare decisis. See e.g., DRD Pool Serv., Inc. v. Freed, 416 Md. 46, 63, 5 A,3d 46 (2010) (describing stare decisis as meaning “to stand by the thing decided,” and that it is “the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process”). The holding in Roy from which the Majority departs today was not an outlier but rather, as I described above, entirely in accord with this Court’s precedent in Ross, as well as the Court of Special Appeals’ holdings in Taylor and Hazelwood, Moreover, in Roy and Ross this Court provided a cogent reason for requiring a lead source expert to exclude other probable sources—explaining that permitting an expert to opine that the defendant’s property was the substantial cause of the plaintiffs lead poisoning, without explaining why other properties that evidence in the record showed were reasonably probable causes of exposure were not, is “as likely to confuse as to assist a jury.” Roy, 445 Md. at 48,124 A.3d 169 (quoting Ross, 430 Md. at 664, 63 A.3d 1). However, the Majority has offered no such rationale for its holding today that sweeps away that requirement.

D. Conclusion

In summary, I would hold that when an expert witness is offered to show that a plaintiff was exposed to lead at a particular property, and that the exposure at that property caused the plaintiffs elevated blood levels and injury from lead poisoning, that expert meets the requirement in Maryland Rule 5-702 to show adequate factual basis only when he relies on more than “scant” circumstantial evidence, rules out other reasonably probable sources of the plaintiffs lead expo *276 sure and elevated blood lead levels, and explains the methodology he used to reach his conclusions. As to Dr. Klein’s first opinion that Mr. Christian was exposed to lead-based paint at the Spaulding Property, while I agree there was adequate data in the record to support that opinion, Dr. Klein failed to explain the methodology he used to reach the opinion so that a trier-of-fact could properly assess it. And, as to his second opinion that Mr. Christian’s exposure at the Spaulding Property was a substantial factor cause of his harm, Dr. Klein did not identify any data or methodology to show that the Spaulding Property was a more probable source of the harm than the Denmore Property.
The Majority’s holding that Dr. Klein was not required to exclude other probable sources of Mr. Christian’s lead poisoning is contrary to this Court’s prior holdings in Ross and Roy. Furthermore, the Majority’s holding will encourage trial courts to place the “imprimatur of court-endorsed expert status” on expert opinions that do not clearly establish that the defendant’s property was, more likely than not, a substantial factor cause of the plaintiffs harm, and thereby lead to confusion among jurors who are called to decide that very issue. See Ross, 430 Md. at 664, 63 A.3d 1.
For the above stated reasons, I would affirm the trial court’s grant of the motion to exclude Dr. Klein’s testimony regarding lead-source causation and, therefore, I respectfully dissent.

. In the context of lead paint litigation, the Court first distinguished a "reasonable probability,” which it equated to a “fair likelihood,” from a more stringent "more probable than not” standard in Rowhouses, Inc. v. Smith, 446 Md. 611, 133 A.3d 1054 (2016). In that case, the Court explained that "a reasonable probability is less than more likely than not, but more than a possibility.” Id. at 659, 133 A.3d 1054.

. After Ross was published, the Court of Special Appeals in Hamilton v. Dackman, 213 Md.App. 589, 591-92, 75 A.3d 327 (2013) upheld a circuit court's grant of summary judgment in a lead paint case, a ruling which the circuit court based in part upon its rejection of the testimony of Dr, Blackwell-White, as well as other experts. The Court of Special Appeals, applying Ross, concluded that Dr. Blackwell-White lacked a sufficient factual basis for her opinion. Id. at 614, 75 A,3d 327. The intermediate appellate court noted that, just as in Ross, Dr. Blackwell-White had improperly relied on an assumption that lead paint was present in the house based upon its age. Id. Moreover, the Court of Special Appeals determined that she had once again “reached a conclusion as to the source [of the plaintiff’s lead poisoning] notwithstanding the presence of other potential sources of lead, and as such her opinion 'was as likely to confuse as to assist a jury.’ ” Id. (quoting Ross, 430 Md. at 664, 63 A.3d 1). This Court subsequently quoted the Court of Special Appeals’ reasoning as to the lack of an adequate factual basis in Hamilton v. Dackman approvingly in our opinion in Kirson, 439 Md. at 538-42, 96 A.3d 714.

. Roy specifically refers to our "holding” in Kirson that "a lead poisoning case may succeed grounded on suitable circumstantial evidence as to source.” Id. However, the Kirson Court only supplied a dicta hypothetical to illustrate that a plaintiff may be able to establish circumstantially that a property contained lead-based paint. See Rogers, 453 Md. at 260-63, 160 A.3d 1207. Subsequently, after Roy was issued, this Court held in Rogers v. Home Equity USA, Inc. that a plaintiff can “rule in” a property as a source of lead exposure by showing that there is a "reasonable probability” that the plaintiff was exposed to lead paint at that property, and that the exposure was a "reasonably probable source” of his elevated blood lead levels. 453 Md. 248, 256, 160 A.3d 1207.

. In addition to the cases described above, the Court of Special Appeals has held in Rochkind v. Stevenson that a trial court did not abuse its discretion by permitting a pediatrician expert to testify as to source causation in a lead paint case. 229 Md.App. 422, 145 A.3d 570, cert. granted, 450 Md. 663, 150 A.3d 818 (2016). Rochkind was thereafter accepted for certiorari to this Court and, as of the date of this dissent, has not yet been decided. As this Court has not yet determined if Rochkind was correctly decided, I did not rely upon it in this dissent.

. The Majority is also correct in noting that Dr. Klein, unlike several of the experts in the cases discussed above, did not make the mistake of concluding solely or primarily from the age of the property that it must have contained lead paint, to which the plaintiff was exposed. See e.g. Taylor, 207 Md.App. at 142, 51 A.3d 743. Although Dr. Klein considered the age of the Spaulding Property, it was just one of several factors upon which he relied to formulate his opinion that Mr. Christian was exposed to lead at that property.